Good morning, Matthew Carvalho on behalf of appellant Timothy Barnes. The trial court in this case dismissed Mr. Barnes' complaint which asserted claims under the Fair Debt Collection Practices Act and parallel Oregon law against the holder in the service service mortgage, the holder being Fannie Mae, and the law firm that handled the foreclosure proceedings on behalf of the holder in a separate proceeding in Oregon State Court. The trial court erred in dismissing the two primary reasons. First, the court concluded that Mr. Barnes had failed to allege conduct that would constitute a violation of the Act. Second, she concluded that the defendants were not engaged in debt collection within the meaning of the Act in pursuit of foreclosure in state court. The first error was driven in large part by the way it was framed in the defendant's motion to dismiss and their focus on the fact that the defendants had a valid binding judgment at the time that they initiated the foreclosure proceeding. The attorney defendants argued in their motion that I think the quote was the premise of plaintiff's claim is that the attorney defendants filed a foreclosure action despite a claim for rescission pending in the other action. That other action had been filed in this trial court in an earlier action alleging claims under the Truth in Lending Act. The trial court accepted that and its dismissal order says at ER 20 that according to defendants they did not violate the Fair Debt At the time, Fannie Mae possessed an enforceable judgment that established validity of the underlying mortgage. The validity of the underlying mortgage. The problem is that while Mr. Barnes did base some of his arguments and allegations in the amended complaint on failures that were baked into the rescission claim that was pending in the Truth in Lending Act action, he also made claims that were separate and apart from that. And he made this clear both in the complaint itself and in opposing the motion to dismiss that his FDCPA claim did not depend wholly on the rescission claim. In fact, the amended complaint contains allegations that there were misrepresentations made by the attorney defendants in the course of the foreclosure proceeding that would violate Fair Debt Collection Practices Act. And in his opposition to the motion to dismiss, Mr. Barnes explained to the actor or material under the Fair Debt Collection Practices Act. That's the sub-argument of that Mr. Barnes to the claim on appeal side against him. In this scenario, Mr. Barnes does owe an obligation and defendants must comply with all respects with the FDCPA. And that's precisely the point here, which is that merely having a valid judgment from another court does not somehow cloak all the actions taken in pursuit of that action in a foreclosure proceeding from liability under the Fair Debt Collection Practices Act. Obviously, most cases that are pursued under that act are based on a valid debt. And so, but that doesn't somehow immunize potential defendants from liability for things they may do in the course of collecting on that debt. Mr. Carvalho, I think their main point is that we're in judicial foreclosure here that contemplates allowing them to recover nothing more than the property. And I think their main argument is that as a result of that, the Fair Debt Collection Practices Act doesn't apply. And it seems to me that that's your biggest hurdle in this case and you haven't addressed that yet. So, could you address that argument? I believe that's what I was going to characterize as the second error, and this is that this was not debt collection at all. And if I understand your question correctly, that's why they argue the statute doesn't apply here at all. Here, however, they appear to recognize that the test really is whether there was the possibility at the end of a foreclosure proceeding of there being a money judgment collectible against Mr. Barnes. Now, at the time that the trial court made this decision, this had not bubbled up through the courts as much as it has now. There are now quite a few cases out there pissing on this aspect of foreclosure. This court in the Hullo case made very clear why a foreclosure proceeding is not ordinarily a collection on its own. It is because the object of it to take and property that's been held as security for the loan, it does not directly collect money from the borrower. And in fact, to the extent the property is sold, any money collected comes from the buyer of the property. But in the McNair case, this court recognized that's not the end of the story because there are differences in the laws of the jurisdictions in this circuit, whether judicial or judicial. And the determining factor, it kind of turns out, is whether at the end of the foreclosure proceeding, there could still be some ability to collect money from the borrower. And this is not the way it was really framed in the trial court, and that's because I think this issue hadn't yet been decided by this court. But in the McNair court, you just... But I don't, I mean, my understanding of Oregon law is that they can't seek a money judgment as in a foreclosure proceeding. And so, isn't this case, isn't that the dispositive question in this case? Don't you lose because of that? Well, it's not, I think, because as the court held in the Anderson case, which is a separate case from Oregon, under Oregon law, the person asserting the foreclosure, pursuing the foreclosure action has the choice of remedies up until the time of collection. And so, the way that it's described, and I think that, I don't believe that the defendants actually disagree with the way it's been characterized here, is that Oregon law is different from, you know, the Anderson case was comparing California law, which extinguished deficiency judgments at a certain point, versus Oregon law, which did not. And it said, Oregon law differs. A mortgage loan under Oregon law remains debt until recovery. At any point, there could be an election of remedies. The party seeking foreclosure can seek to abandon one remedy in favor of the other. And so, until... But I mean, even if that were true, I mean, there's no indication in this case that they did anything but seek to recover the property, right? I mean... Well, I think that, so there is ambiguity here too, and that's, and Mr. Olson's brief describes why there are references to a money judgment pre-2015 foreclosure proceedings, but I'm not sure that... Yeah, but that's a, isn't that just kind of a technical, quirky, procedural requirement that you have to, you have to include the amount. Potentially, you have to have a prayer for a owed, but in the proceeding, all you're doing is seeking to recover the property. But that's not true in this particular proceeding in Oregon State Court. In the complaint, the foreclosure complaint pursued in Boalt County Circuit Court, there was a money judgment demand in the complaint. Right, but that was sort of a technical requirement. They had to include that in their foreclosure complaint, but that, and it's sort of this quirky thing in Oregon law that they've now gotten rid of, but it doesn't reflect the fact that they were seeking a money judgment from you, and I'm not sure they could have, even before 2015, sought a money judgment from you, but in any event, they didn't in the case, right? I don't see anything that would have precluded them for, from abandoning the foreclosure action at any point. You know, as we know, at the point this it had been dismissed on other grounds by the state court, but there was nothing that was precluded the defendants here from abandoning that action and instead deciding to seek a money judgment against Mr. Barnes. Well, but they didn't do that. They pursued their judicial foreclosure action, and so you're saying just because there's some theoretical possibility that they could have dropped their lawsuit and gone and changed their mind and gone after money instead of the property, that we should apply the Fair Debt Collection Practices Act to the judicial foreclosure proceeding in Oregon? Yes, and there's two reasons for that. One is that the test is not simply whether they have decided to pursue the remedy or not. It's whether or not the right to do so has been extinguished, and so, for example, when we look at the Ho case, what the court said was that in a California non-judicial proceeding, the ultimate result of that proceeding is that any money debt that might be owed by the borrower is extinguished at the end of that, and this is what the Anderson court also contrasted with Oregon law by saying that under California law, as soon as one decides to pursue foreclosure, the possibility of money judgment against the borrower is extinguished. That's not the case under Oregon law because so long as the party pursuing foreclosure can elect to shift over to seeking money judgment. Well, counsel, it sounds to me like, you know, this isn't as easy of a case as the California one, but it's certainly not as bad as Arizona, so it's somewhere in between, but in Abdusky, the Supreme Court said that antecedent steps required under state law to enforce a of the FC, the act, so I, you know, it seems to me like you'd have to convince us that you're closer to, I understand that this isn't completely exactly like California, but it seems closer to California than it does to Arizona in the sense that if you do pursue the foreclosure, you don't have a monetary, you know, you don't have a monetary remit once you do that. I think the thing to focus on is that the, it sounds like to me that the difficulty we're having here is whether or not the pursuit of a money judgment against Mr. Barnes would have occurred in the same proceeding or not. And, you know, if you look at the decision in Ho, it was not simply that the party pursuing the proceeding could have had no right to pursue a money judgment in that proceeding for all purposes. It's distinguished here too, it's just distinguished at a different point, I think, right? You're distinguished, it's distinguished in California earlier, but here I think on Oregon law, look in the Connolly case, Oregon law prohibits deficiency judgments once you've actually foreclosed. So it's distinguished here, it's just distinguished at a later point, isn't that right? Well, right, and I guess my point is that once someone elects to pursue a procedural path that the mere selection of which distinguishes the right puts you in a different place than you would be if you're still maintaining the ability to go for a money judgment against the borrower. And it's not simply about what is possible in that proceeding, but what is possible in a later proceeding that might be pursued in another form even. It seems to me that for the rationale that focused on the existence of a deficiency judgment or not, it's not merely whether one maintains the right to pursue it in the current proceeding where foreclosure is being pursued, but rather whether one has a right coming out of that proceeding to pursue a money judgment or whether it's distinguished. And I'm not sure they do in Oregon, but even if they did, wouldn't the answer be that the Fair Debt Collection Practices Act would then apply to that subsequent proceeding potentially, but wouldn't apply to the judicial foreclosure proceeding where the only thing they're seeking is recovery of the property? Well, it could. I mean, I think it depends on the nature of the proceeding because I think here we are with the judicial proceeding, which obviously distinguishes us from many of the other cases that we've looked at. And then the other thing that distinguishes it is that it's a judicial proceeding in which there is no automatic distinguishment of a right to a money recovery. And I think that makes it not so much unlike the Arizona case that Judge Van Dyke mentioned because the issue there was that after execution of this homeowner's dues, there could still be a debt existing on the same obligation. And so it's not, I think that it's a mistake to believe that the right, the existence of the right, the extinguishment of it, thus has to be viewed within a particular proceeding. You have to step back and look at whether this proceeding extinguishes the right altogether or whether after going through the foreclosure, the borrower will still have the potential for money judgment. So your argument is not dependent on this technical requirement that they got rid of in 2015? Well, no, because even afterward, I mean, if you look at the revised statute attached to the defendant's brief, it says may. Everything is attached in terms of what the lender may do or choose to do. And so if at any point up to the sale of the property in a foreclosure proceeding, the lender decided they wanted to stop and instead shift and pursue a money judgment, that I think while we're in that procedural posture, the FDCPA applies. And I think you can kind of reconcile the case in the statute's language itself. Counsel, it looks like you reused up all your time. We'll see about rebuttal later, but we'll go ahead. And I think, Mr. Olson, are you presenting first? Good morning, Your Honors. Yes, Lance Olson on behalf of Appellees Fannie Mae and Ceteris. And my intent is to use eight minutes of time this morning and then yield to my co-defendant counsel at that point. I'd like to continue this conversation about whether this is debt collection. But before I do that, I want to take a step back because in order to establish a claim under the FDCPA against Fannie Mae or Ceteris, as a threshold matter, we have to answer the question of whether either of these parties were debt collectors. And as the court record in the briefing has indicated, Fannie Mae was not a debt collector. And the reason for this is because Fannie Mae owned the debt that it was seeking to collect. The Supreme Court in Hansen v. Santander has made clear that a company that collects debt that it purchases for its own account does not trigger the statutory definition of a debt collector. And this is because the plain language of the Act focuses on third-party collection agents that are regularly collecting for another debt owner, not a debt owner seeking to collect itself. So, counsel, this is your alternative argument, right, that Fannie Mae's—are you prepared to talk about what we were talking about with your opposing counsel about that issue? Absolutely. Because I think that's something we're very—what is your position on whether or not the Oregon statutory framework here is more like Arizona or is more like the California in it? He says that it doesn't distinguish the—unlike California, it doesn't distinguish your ability to get a deficiency judgment. Well, I think that his basis for the argument is that I could change my mind and go do something else later. And if that's the basis, then we have a problem with the Supreme Court. And we don't evaluate the conduct in terms of what you could do. We evaluate what you did do. And in this case, what Fannie Mae did was file the judicial foreclosure action, the result of which would be the absence of any personal money judgment award against Mr. Barnes. So, by operation of law— Can you explain a little bit how it works? Because there's a little difference, isn't there, since you do have to plead that you're asking for, or at least you used to have to plead that you're asking for the amount of—the value of the property you're getting. Can you—once you do that, can you—is there a point after that you can opt to, instead of judicially foreclosing, actually go after a money judgment? No, not without dismissing the judicial foreclosure action entirely, potentially, if you haven't yet got to judgment, and starting something new. Again, this is like a hypothetical, but the reason for the money judgment is because you need to be able to tell the defendant the amount that he has to pay in order to stop the action, and you have to be able to establish a bid for the foreclosure sale. If you just—if you don't mention anything about money owed or what the amount and value of the debt is, you can't conduct the foreclosure. So that's why the requirement—now, the law change allowed you to be a little bit more artistic about making clear that this judgment amount is only for this purpose, but that's really kind of a minor difference. The point remains, can you continue to pursue this borrower, or are you merely enforcing the security interest? And that was—the holding and the primary thrust of Objuski is because the ultimate goal is recovery of the security and enforcement of the security interest. This isn't debt collection. We're not going after this borrower. The reservation about not making a decision under judicial foreclosure case is specifically said because there could be the availability of deficiency judgment. So that's—the recognition is that if you are foreclosing plus, so you're getting your security interest and you're also getting a money judgment, then the result may be different than what was found in Objuski. Similarly, every case that we've talked about that has not—that has not dismissed a defendant who is engaged in judicial foreclosure, there was an allegation of additional conduct that was potentially a violation of the FDCPA, whether it be demand letters that were sent outside of the context of the judicial foreclosure, reports to—allegedly false reporting to credit. None of those extra actions are pled in this case. This case was solely about the filing of judicial foreclosure, and the only thing raised in the replacement briefing was about misrepresent—alleged misrepresentations within the context of the judicial foreclosure, putting aside that they weren't really misrepresentations. They were wholly and specifically within the four corners of the judicial foreclosure action, so we don't get to debt collection as the Supreme Court has discussed it in Objuski. And really, what Objuski did was just said, ho, it's still good law, and McNair is still good law. There's nothing about Objuski that frustrates the—the point of McNair, which is if you were seeking something more than just enforcement of the security interest, then you can be subject to liability under the FDCPA. To go back, though, I do think that—I don't know if they're considered alternate or primary arguments, but if you don't establish that Fannie Mae and Ceteris are debt collectors, because in the case of Fannie Mae, it's collecting its own debt, and the principal purpose argument doesn't fit Fannie Mae. Fannie Mae was created by Congress coming out of the Depression to spur the housing market, and it's there to create liquidity and affordability and growth of the housing market. It's clearly not—has a principal purpose of collecting debt. With respect to Ceteris, the plaintiff does not allege that Ceteris' principal purpose is the collection of debt, and in this—this court decided in Schlegel v. Wells Fargo that it's not going to assume the principal purpose if you don't make that argument. Mr. Olson, I mean, I understand why you're—you would want to press this argument for your clients, but why—if the statute doesn't apply to this proceeding, why should we care about the argument you're making right now? Well, again, because I think it's—you—the question about the judicial foreclosure is, is it debt collection? And my point is, before you even have a discussion about debt collection, you have to decide if you're a debt collector. So I think they work on top of each other. We've—I think we've exhausted why this is not debt collection and why it doesn't apply, but I also wanted to make sure that we make the point that these folks also aren't debt collectors. And I think that is— But if you had thought the—if you had had an Arizona-type remedy, then you would be a debt collector, right? Isn't that what McNair says? Correct. If my clients were pursuing something more than enforcement of the security instrument, I would not be making that argument. Then I think that the core of your that the status of your clients depends on their conduct, and not that we can do—we can figure out their status prior to figuring out what they filed. Well, I think you could have— That makes the first argument very difficult to make, I think, unless we know how they conducted themselves. And your client—your argument is, our clients conducted themselves as collecting on their own debt, and that—and therefore they are not debt collectors. But that's just a flip side of the—an what was secured. I think the arguments work well together, if that's what you're saying. I think they're both not debt collectors, and it wasn't debt collection. I think that's what the briefing and the pleading establishes. And without being able to, you know, provide any support for the argument that there is debt collection activity or that these are debt collectors, I think that the appropriate conduct is for this court to affirm the dismissal. At this point, I'm running low, and so I need to yield my reigning time to my co-defendant counsel, unless the court has additional questions for me. I'm here. Judges? Ms. Schreyer? Is that how I say it? Yes. Good morning. Janet Schreyer on behalf of the attorney defendants here. As you know, we're here today because the plaintiff asked for rehearing based on the Obdusky case. This court affirmed in 2018 the trial court's dismissal of this action, the FDPCA allegations, because foreclosing did not fall within the parameters of FDPCA. There's nothing that occurred in Obdusky's decision that changed the landscape of the law as far as applicable to this case. This court's decision affirming the trial court the first time around in 2018 relied on the Ho case, and the Ho case was mentioned and effectively recognized and affirmed in the Obdusky case. And so our position is nothing has changed except perhaps our arguments have become stronger since 2018 for a couple of reasons. The first one is plaintiff relied heavily on the TILA action, truth in lending action, that he had brought and his arguments related to that. And since the time that we've been briefing this, his TILA action has been dismissed, affirmed the dismissal by this court, and the Supreme Court, I believe, even denied cert in connection with that. So those arguments, which if you look back at the pleadings and the briefs, take up probably 90 percent of the briefing in the underlying action, that is all gone. And Obdusky then, we come to that, and Obdusky confirmed the principles articulated by this court in Ho, that when a security interest is being adjudicated, it is not seeking, and it does not seek money, a money award, it doesn't fall within the definition of debt collection under the FDPCA, under specifically the definition of 1692A-5, which says a debt is collection of money, and collection of debt is collection of money. And Obdusky decision affirms what this circuit had already done in Ho, and this court subsequently held in this case, and that is the foreclosure activity of the defendants does not fall within the act. The McNair decision was a very different situation than what we have here. It turns on the question of whether the creditor defendants sought a money judgment. In that case, they did. This court reversed the decision in that precisely and only because the defendants obtained a money judgment for the homeowner's fees. They could do that under that law, they did that, and this court reversed based on only that, not on the foreclosure proceeding that was involved. A, that didn't happen here, and it cannot happen in Oregon law, whether a debtor or creditor can change course and decide to dismiss something and do something else, setting that aside. I mean, what they actually did was only foreclose, and under Oregon law, there was not a possibility of them obtaining a money judgment, and they did not obtain a money judgment. So we fall squarely within Ho, which is still good as well as the Obdusky decision, and consequently, the trial court got it right. You all got it right the first time around, and there's no basis to reverse at this point. I don't know if the court wants me to address the pleading issues that plaintiff raises because I think it's important if you get beyond that. I don't think you ought to get beyond that, and you don't need to get beyond that. One other thing I want to say that the Anderson case that plaintiff has talked about is simply a trial court case from Oregon, and it preceded both Ho and Obdusky, and it really has really nothing to do with this here. It actually called out exactly what Obdusky and Ho actually later held, that acts necessary to effectuate foreclosure are not debt collection. So it isn't binding on you. It really doesn't apply, but it did carve out that law and correctly observe that as this court subsequently did and later adopted by the U.S. Supreme Court. Plaintiff is trying to say, well, look over here. There are a bunch of allegations that have been overlooked by the district court and the Ninth Circuit in its review, but the things that they point to are simply conclusory allegations which are contradicted by the documents attached to the complaint. You'll see if you look at the E.R., the complaint is lengthy, and as you often see with the pro se's, a lot of gobbledygook, I will just say, and there are hundreds of pages of attachments, and if you look at the allegations they make, they're contradicted by the attachments, and in any event, the examples that plaintiff gives of the so-called misrepresentations are not false or deceptive if you look at them. They're alleging things like plaintiff claimed to be the holder of the note, and that was specifically denied by Fannie Mae at another time. Well, if you look at what they're talking about, and again, the documents are all attached. Fannie Mae didn't acquire this note until between the foreclosure proceeding and the TILA proceeding in 2011 and the foreclosure proceeding in 2015. The statements that they are claiming are misrepresentation are not that, and again, are contradicted by the very things that the plaintiff has attached to his complaint. They allege that plaintiff claims that a document attached in the foreclosure in 2015 they had disclaimed knowledge of four point two in the transcript or in the record reveals that this is not a false statement. He appears to claim failure to produce something in earlier litigation is somehow an affirmative misrepresentation in later litigation. Even though it is established by anything plaintiff attached, what was requested, how it was requested, how it was produced, it just makes no sense. So, I would say if you get to that issue, you'll see that there aren't false representations made there. I also want to get to quickly the parallel state law claims. The Oregon Unfair Trade Practices Act has a parallel provision. If we win on the FDPCA allegation, plaintiff has no UTPA claim. Plaintiff does not have a conspiracy claim either way. That must be affirmed. Plaintiff does not and there's no separate claim against attorneys when they're representing their clients and plaintiff doesn't contradict that in his reply brief. Consequently, we think you should affirm once again. Thank you counsel. Judges, do you have any other questions for the appellees? Mr. Carvalho, we'll go ahead and give you one minute for rebuttal. One minute. Briefly, I just want to say that I think our brief distilled the alleged misrepresentations such that not all of the misrepresentations fall into the description that Ms. Traer just gave you. Most importantly, the one about whether or not there was another prior action pending about which there was a colloquy with the judge that's in our brief and it resulted in the dismissal of the case. But I agree that we have to first establish that the FDCPA applied here and that this was debt collection. I think that the trouble here is that the definition of debt in the statute, whether there's a judgment is frankly not important to the statute. Statute defines debt to include any obligation to pay whether or not such obligation has been reduced to a judgment. And I think it's actions taken in pursuit or in attempting to collect or in collecting. And so I think the reason that it makes sense to distinguish between actions taken in a proceeding that will extinguish itself the money debt versus actions taken in a proceeding that at the end of which there may still remain a money judgment, that perhaps is the reason that these two things need to be looked at separately and why the extinguishment is the important thing rather than whether it's the extinguishment of debt in the proceeding where we're actually looking at it in terms of the conduct. Thank you, counsel. We have your argument. This case will be submitted today. Thank you, counsel, for your argument.
judges: Bybee, Vandyke, Chhabria